IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ANNAPURNA II, LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| BANC OF AMERICA MORTGAGE SECURITIES, | ) |
| INC., BANK OF AMERICA, N.A., and | ) |
| WELLS FARGO BANK, N.A., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Annapurna II, LP ("Annapurna"), for its Complaint against Defendants Banc of America Mortgage Securities, Inc. ("BoAMS"), Bank of America, N.A., ("BoA"), and Wells Fargo Bank, N.A. ("Wells Fargo"), (BoAMS, BoA, and Wells Fargo collectively "Defendants"), states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Annapurna II, LP is a Limited Partnership organized and existing under the laws of the State of Delaware, with its principal place of business located at 1908 Main Street, Kansas City, Missouri 64108.

2. Defendant Banc of America Mortgage Securities, Inc. ("BoAMS") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 201 North Tryon Street, Charlotte, North Carolina 28255.

1

3. Defendant Bank of America, N.A. ("BoA"), is a national banking association organized and existing under the National Bank Act, with its principal place of business located at 101 South Tryon Street, Charlotte, North Carolina 28255.

4. Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), is a national banking association organized and existing under the National Bank Act, with its principal place of business located at 9062 Old Annapolis Road, Columbia, Maryland 21045-1951.

5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(A) in that there is complete diversity of citizenship between the parties, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## FACTUAL ALLEGATIONS

6. On or about May 24, 2005, Banc of America Mortgage Securities, Inc. ("BoAMS") filed with the United States Securities and Exchange Commission ("SEC") a prospectus for the purpose of marketing the issue and sale of certain Mortgage Pass-Through Certificates, issuable in series by separate trusts (the "Prospectus").

7. Each series of certificates was to be issued by a separate trust, each of which was to be formed pursuant to a pooling and servicing agreement among BoAMS as the depositor, and the servicer and trustee specified in the prospectus supplement applicable to each particular series of certificates.

8. As set forth in the Prospectus, BoAMS would acquire certain mortgage loans from affiliated or unaffiliated mortgage originators and sellers, and would then transfer ownership of the mortgage loans to the specified trust for any particular series of certificates, which in turn would issue the certificates for sale pursuant to the applicable prospectus supplement and pooling and servicing agreement.

2

9. On or about June 20, 2005, BoAMS filed with the SEC its Form 8-K for the period ended June 16, 2005. Attached to the filing as Exhibit No. 99 were the Collateral Term Sheets, and Computational Materials and Structural Term Sheets prepared by Banc of America Securities, LLC and Lehman Brothers, Inc. in connection with BoAMS's planned issuance and sale of Mortgage Pass-Through Certificates, Series 2005-F. BoAMS's filing outlined a structure which included a single class of Super Senior Support certificates (the class 1-A-2 certificates); a structure consistent with BoAMS's previous issue of Mortgage Pass-Through Certificates, Series 2005-E.

10. On or about June 27, 2005, BoAMS filed with the SEC the Prospectus Supplement, bearing a date of June 23, 2005, and describing the issue and sale of Banc of America Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2005-F (the "Certificates").

11. Pursuant to the Prospectus Supplement, the Certificates were to be issued by the Banc of America Mortgage 2005-F Trust (the "Trust").

12. The Prospectus Supplement identified BoA as the seller of the certificates, and the servicer of the mortgage loans deposited into the Trust by BoAMS, and further identified Wells Fargo as the Trustee of the Trust.

13. The Certificates were to be issued pursuant to a pooling and servicing agreement among BoAMS as the Depositor, BoA as the Servicer, and Wells Fargo as the Trustee.

14. The pooling and servicing agreement, the governing agreement for the Trust and its administration, was to be dated as of the closing date of the issue and sale of the Certificates which, according to the Prospectus Supplement, was June 28, 2005.

**A.    Defendants Issued and Sold the Class 2-A-4 Certificates as Senior, Pass-Through Certificates, Not Senior Support Certificates.**

15.     Pursuant to the Prospectus Supplement, the Trust issued four groups consisting of eleven classes of Senior Certificates, and six classes of Class B certificates to be subordinated to, and provide credit enhancement for, the Senior Certificates.

16.     The Senior Certificates included the Class 1-A-1, 1-A-2, 1-A-R, 2-A-1, 2-A-2, 2-A-3, 2-A-4, 3-A-1, 4-A-1, 1-IO, and 2-IO certificates.

17.     Like the Class 2-A-1, 2-A-2, and 2-A-3 certificates, the Class 2-A-4 certificates were defined as "Senior, Pass-Through" certificates; they were neither identified nor defined as "support" certificates.  In fact, with the exception of the Class 1-A-2 certificates, none of the Senior Certificates were identified or defined as "support" certificates, which possess inferior credit characteristics by taking losses sooner than a Senior, Pass-Through certificate.

18.     The Prospectus Supplement required that each class of the Certificates receive from Fitch Ratings ("Fitch") and Moody's Investor Service, Inc. ("Moody's") at least the rating set forth for each respective class.

19.     The Class 2-A-1, 2-A-2, 2-A-3, and 2-A-4 certificates all required a "Aaa" rating from Moody's, and a "AAA" rating from Fitch.  That all of the Class 2-A certificates required the same ratings was indicative of their all having the same "Senior, Pass-Through" classification.

20.     Like the Class 2-A-1, 2-A-2, 2-A-3, and 2-A-4 certificates, the Class 1-A-1 certificates, which were classified as "Super Senior, Pass-Through" certificates, required a "Aaa" rating from Moody's, and a "AAA" rating from Fitch.  Conversely, the Class 1-A-2 certificates, which were classified as "Super Senior Support, Pass-Through" certificates required a lesser

4

"Aa1" rating from Moody's, which was indicative of their classification as "support" certificates. This structure was consistent with the structure of the previously issued Series 2005-E certificates, the Collateral Term Sheets, and Computational Materials and Structural Term Sheets attached as Exhibit No. 99 to BoAMS's June 20, 2005, Form 8-K, and Moody's and Fitch's prior ratings of "Senior Support Tranches."

21. On or about July 14, 2005, BoAMS filed its Form 8-K with the SEC. According to this filing, on June 28, 2005, BoAMS:

> … sold Mortgage Pass-Through Certificates, Series 2005-F, Class 1-A-1, Class 1-A-2, Class 1-A-R, Class 2-A-1, Class 2-A-2, Class 2-A-3, Class 2-A-4, Class 3-A-1, Class 4-A-1, Class B-1, Class B-2 and Class B-3 …, having an aggregate original principal balance of $712,791,100.00 … issued pursuant to a Pooling and Servicing Agreement, dated June 28, 2005 …

**B. The Trust's Governing Document Required That the Class 2-A-4 Certificates be Administered as Senior, Pass-Through Certificates; Not Senior Support Certificates.**

22. Attached to BoAMS's July 14, 2005, Form 8-K was the Pooling and Servicing Agreement, dated June 28, 2005, between BoAMS as Depositor, BoA as Servicer, and Wells Fargo as Trustee (the "PSA").

23. Consistent with the Prospectus Supplement's classification of the Class 2-A-4 certificates as "Senior, Pass-Through" certificates, the distribution and loss allocation provisions of the PSA provided that the Class 2-A-4 certificates would share sequentially and proportionally in any losses suffered by the holders of the Group 2 Senior Certificates.

24. On June 29, 2005 Moody's Investors Service assigned a "Aaa" rating to the seven (7) senior certificates (the class 1-A-1, 2-A-1, 2-A-2, 2-A-3, 2-A-4, 3-A-1, and 4-A-1 certificates), and a lesser "Aa1" rating to the only super-senior support certificates (the class 1-A-2 certificates) issued in the Series 2005-F transaction. Contemporaneously, Moody's issued a

customary press release publicly announcing its ratings. Thus, at the time the Certificates were sold, Moody's rated the Class 2-A-4 certificates "Aaa" reflecting their classification as "Senior, Pass-Through" certificates, as required by the Prospectus Supplement.

25. At the time the Class 2-A-4 certificates were sold, therefore, they were classified and rated as "Senior, Pass-Through" certificates, and nothing in either the Collateral Term Sheets, and Computational Materials and Structural Term Sheets attached as Exhibit No. 99 to the June 20, 2005, Form 8-K filing, the Prospectus Supplement or the PSA reflected an intent by BoAMS that they be classified and sold any other way.

**C.    BoAMS Attempted to Materially Alter the Structure of the Class 2-A-4 Certificates Only After They Were Marketed, Rated, and *Sold* as Senior, Pass-Through Certificates.**

26. On or about August 25, 2005, BoAMS filed its Form 8-K with the SEC. Attached to BoAMS's filing was Amendment No. 1 to the PSA, dated August 23, 2005.

27. As set forth in Amendment No. 1, almost two full months after it sold the Certificates, BoAMS purported to unilaterally amend the distribution and loss allocation provisions of the PSA to reclassify the Class 2-A-4 certificates as Senior "Support" certificates, as opposed to "Senior, Pass-Through" certificates as they were originally classified in both the Prospectus Supplement and the PSA.

28. Knowing that Amendment No. 1 materially altered the credit structure of a security that had already been sold, BoAMS, on its own behalf and under its own charter, and not on behalf of the Trust, filed the August 25, 2005, Form 8-K, despite the fact that the Trust was the Registrant for filing purposes. BoAMS did so with the intent that neither the August 25, 2005, Form 8-K, nor its Exhibit No. 4 – Amendment No. 1, would be associated or capable of

6

being located with the public filings for the Trust, in an attempt to hide this material change from future investors.

29. As BoAMS intended, neither the August 25, 2005, Form 8-K, nor its Exhibit No. 4 – Amendment No. 1, are capable of being located with the public filings for the Trust; they are instead listed only under BoAMS's public filings and are not expressly identified as being related to the Trust.

30. Also on or about August 25, 2005, almost two full months after the class 2-A-4 certificates were sold as "Senior, Pass-Through" certificates, BoAMS filed a Supplement to the Prospectus Supplement. Consistent with Amendment No. 1, the Supplement to the Prospectus Supplement purported to reclassify the Class 2-A-4 certificates and remarket them as "Super Senior Support Certificates," with a change to the Moody's rating required for their issuance from "Aaa" to a lesser "Aa1" rating to ostensibly reflect the changed classification.

31. In a deliberate effort to prevent future investors from learning of the material change in the structure of the class 2-A-4 certificates, BoAMS, like it did with the August 25, 2005, Form 8-K, filed the Supplement to the Prospectus Supplement on its own behalf and under its own charter, and not on behalf of the Trust. As a result, just as BoAMS intended, the Supplement to the Prospectus Supplement is not associated or capable of being located with the public filings for the Trust; but is instead listed only under BoAMS's public filings.

**D. BoAMS's Attempts to Materially Alter the Structure of the Class 2-A-4 Certificates Were not the Result of a Mistake; They Were a Deliberate Alteration of the Flow of Losses to the Class 2-A-4 Certificates.**

32. BoAMS couched Amendment No. 1 as a simple change in the PSA for the purpose of curing an "ambiguity or mistake" in its language. But the change BoAMS tried to affect was anything but a mistake.

33. The structure of the Series 2005-F transaction mirrored the previous issue of the Series 2005-E certificates in that both issues consisted of seven classes of senior or super senior certificates, and only one class of super senior support certificates. Similarly, both issues required that the senior or super senior certificates be rated "Aaa" by Moody's, while the classes super senior support certificates required only the lesser "Aa1" rating.

34. In addition, nothing in either the Collateral Term Sheets, and Computational Materials and Structural Term Sheets attached as Exhibit No. 99 to the June 20, 2005, 8-K filing, the Prospectus Supplement or the PSA reflected an intent by BoAMS that the class 2-A-4 certificates be classified and sold as anything other than "Senior, Pass-Through" certificates.

35. BoAMS purported reclassification of the Class 2-A-4 certificates was not an effort to cure any "ambiguity or mistake." Instead, it substantially altered their structure in that it shifted the allocation of losses directed initially to the class 2-A-3 certificates to the class 2-A-4 certificates. Amendment No. 1, therefore, purported to subordinate the class 2-A-4 certificates resulting in increased exposure to loss as described in the Supplement to the Prospectus Supplement.

36. BoAMS intentional filing of Amendment No. 1 and the Supplement to the Prospectus Supplement in a manner that hid them from future investors is only further evidence of BoAMS's intent to substantially and materially alter the flow of losses to the class 2-A-4 certificates without making full disclosure of the change.

37. Moreover, at no time did BoAMS inform Moody's of the purported change as evidenced by the fact that, after the PSA was purportedly amended, Moody's did not publicly disclose, change or acknowledge a lesser rating of "Aa1" to reflect the change. Instead, Moody's then current rating of "Aaa" remained unchanged and its previously disclosed ratings indicated

8

Case 4:10-cv-01217-DW   Document 1   Filed 12/08/10   Page 8 of 15

only one class of senior or super senior "support" certificates in existence for the Series 2005-F issue.

38. At about the same time that it purported to alter the class 2-A-4 certificates in July 2005, BoAMS marketed the issuance of the Series 2005-G and 2005-H certificates. The Series 2005-G and 2005-H certificates were to be issued with four classes of super senior or senior, pass-through certificates, and four classes of super senior or senior support certificates; a radical departure from the structure of the Series 2005-E and 2005-F certificates.

39. Recognizing that Moody's would never explicitly assign a "Aaa" rating on the newly minted class 2-A-4 "Super Senior Support" certificates, BoAMS announced that it had replaced Moody's with Standard and Poor's for purposes of rating the Series 2005-G and 2005-H certificates, and that Standard and Poor's had assigned to all of the senior certificates, whether support certificates or not, a rating of "AAA."

40. Thus, it was only after Standard and Poor's indicated its willingness to issue the same rating to super senior support certificate as it would to a super senior or senior, pass-through certificate that BoAMS discovered its "mistake."

41. With Standard and Poor's on board and buying into BoAMS program of issuing super senior support certificates that had been assigned a rating commensurate with a super senior or senior, pass-through certificate, and armed with Standard and Poor's new ratings, BoAMS intentionally set out to quietly alter the structure of the class 2-A-4 certificates without fully disclosing the substantial and material adverse impact such a change had on the allocation of losses to those certificates.

**E. The Trust Never Publicly Recognized or Acknowledged BoAMS's Improper Alteration of the Class 2-A-4 Certificates' Structure.**

42. The Trust has never filed Amendment No. 1, or any other public notice of the Trust or the Trustee's acknowledgement or acceptance of Amendment No.1, or its purported change to the structure of the Certificates. According to the public filings made by the Trust, therefore, Amendment No. 1 does not exist.

43. During the period June through December 2005, the Trust, as Registrant, filed seven (7) separate Forms 8-K, none of which mention the purported Amendment No. 1 in any respect.

44. On or about March 30, 2006, BoA filed on behalf of the Trust, as Registrant, a Form 10-K annual report for the fiscal year ended December 31, 2005. Like the Forms 8-K, the Form 10-K annual report makes no mention of the purported Amendment No. 1, or the material alteration of the class 2-A-4 certificates. In fact, the Trust's Form 10-K attached as Exhibit 4.1, the PSA dated June 28, 2005.

45. In addition, attached to the Form 10-K as Exhibit 31.1 is the certification of Robert Caruso, a BoA Senior Vice President. By executing the certification, Mr. Caruso certified that he had reviewed the Form 10-K, "and all current monthly current reports on Form 8-K … filed in respect of periods included in the year covered by this annual report of the Banc of America Mortgage 2005-F Trust formed pursuant to the Pooling and Servicing Agreement, dated June 28, 2005 …," and further certified that the Servicer had "fulfilled its obligations under" the PSA.

46. Moreover, attached to the Form 10-K as Exhibit 99.3 is the certification of Randall Chestnut, another BoA Senior Vice President. By executing the certification, Mr.

Chestnut also certified "of the Banc of America Mortgage Trust 2005-F formed pursuant to Section 3.18 of the Pooling and Servicing Agreements dated June 28, 2005," that the Servicer had "fulfilled all it's [sic] obligations under the [PSA] throughout calendar year 2005."

47. Thus, the Forms 8-K, and the Form 10-K with its certifications recognize and refer only to the PSA. They make no mention, not even in passing, of Amendment No. 1.

48. As further evidence of the fact that neither the Trust nor the Trustee have recognized Amendment No. 1 or its purported affect, Wells Fargo's own investor portal, CTS Link, refers only to the June 28, 2005, Prospectus Supplement under "Deal Documents;" it contains no reference to Amendment No. 1, the Supplement to the Prospectus Supplement, or any other information about the purported change in the structure of the class 2-A-4 certificates.

## F.  The Credit Ratings Agencies Were Never Informed About Amendment No. 1 or its Purported Change in the Structure of the Class 2-A-4 Certificates.

49. Defendants never informed the credit rating agencies about Amendment No. 1 or its purported change to the structure of the class 2-A-4 certificates, as evidenced by the fact that Moody's did not alter its rating, and by the fact that no public ratings disclosures were made by either ratings agency evidencing the change to or any new issuance of the class 2-A-4 certificates.

50. That Defendants failed to notify Moody's of the structural change to the Class 2-A-4 certificates is evidenced by the fact that Moody's never publicly issued a new rating reflecting the purported reclassification.

51. When the Certificates were sold on June 28, 2005, Moody's rated the Class 2-A-4 certificates "Aaa," the rating required by the Prospectus Supplement for their "Senior, Pass-

11

Through" classification, and the same rating it assigned to the Class 2-A-1, 2-A-2, and 2-A-3 certificates, which were similarly classified as "Senior, Pass-Through" certificates.

52. In fact, at all times after the initial sale of the Certificates on June 28, 2005, and despite Amendment No. 1, Moody's has consistently assigned the same rating to the Class 2-A-4 certificates as it has the Class 2-A-1, 2-A-2, and 2-A-3 certificates, consistent with their "Senior, Pass-Through" classification under the Prospectus Supplement and the PSA.

53. Thus, there was no signal to future investors through a change in the publicly disclosed ratings that there had been a change in a major structural feature of the Class 2-A-4 certificates.

## COUNT I
### (Declaratory Judgment, Pursuant to 28 U.S.C. § 2201)

54. Annapurna incorporates and restates the paragraphs set forth above as if fully set forth herein.

55. Annapurna purchased 100% of the Class 2-A-4 certificates in 2010.

56. Like all other investors would, Annapurna relied upon the integrity of the information publicly available to it.

57. The information about the Trust available to Annapurna through EDGAR and CTS Link refers only to the Prospectus Supplement and indicates that the PSA, as it existed prior to BoAMS's purported amendment, is the governing document for the Trust.

58. According to the Prospectus Supplement and the PSA, the class 2-A-4 certificates purchased by Annapurna were classified as "Senior, Pass-Through" certificates.

59. In addition, at the time Annapurna purchased the Class 2-A-4 certificates, Moody's rated the certificates "B3." Significantly, Moody's then current ratings for the Class 2-

12

A-1, 2-A-2, and 2-A-3 certificates were also "B3." That the Class 2-A-4 certificates shared the same rating as the Class 2-A-1, 2-A-2, and 2-A-3 certificates indicated to the market place, and in particular, Annapurna as a subsequent investor, that the credit structure and classifications of the certificates had not changed from those set forth in the Prospectus Supplement and the original PSA.

60. Annapurna, therefore, purchased the Class 2-A-4 certificates based on the classifications set forth in the Prospectus Supplement, the loss allocation provisions of the PSA, and the ratings, which were consistent therewith.

61. A real and actual controversy exists as to the effectiveness of Amendment No. 1 to the PSA.

62. Annapurna contends that, where it was never publicly filed or otherwise recognized by the Trust, Amendment No. 1 is a legal nullity having no force or effect, and that the class 2-A-4 certificates it purchased are classified as "Senior, Pass-Through" certificates as intended at the time of their initial sale.

63. Annapurna further contends that BoAMS efforts to alter, in a substantial and materially adverse fashion, the loss allocation provisions related to the class 2-A-4 certificates, which it did not own at the time of the purported alteration, and which in fact had been sold some two months prior to the purported alteration, are prohibited. Such post sale alterations, if not properly reported as is the case here, lead to confusion about the terms of the governing documents, and allow issuers such as BoAMS to engage in misconduct that threatens the integrity of the securities at issue, while going undetected by the investor community.

64. Annapurna desires a judicial determination of its rights and obligations under the PSA, and a declaration as to the effectiveness of Amendment No. 1.

13

65. A judicial declaration is necessary and appropriate under these facts and circumstances in order that Annapurna may ascertain its rights and obligations.

WHEREFORE, Annapurna requests that the Court enter its judgment in Annapurna's favor, and against Defendants, declaring:

1. That Amendment No. 1 was never filed or acknowledged by the Trust as Registrant and is, therefore, a legal nullity;
2. That Amendment No. 1 is void and ineffective, and should be rescinded; and
3. That the Class 2-A-4 certificates remain "Senior, Pass-Through" certificates, and the loss allocation provisions of the PSA as originally filed are the operative terms governing the allocation of losses to the Class 2-A-4 certificates, commensurate with such classification.

Annapurna further seeks its costs incurred herein, including its reasonable attorneys' fees, and such other and further relief the Court deems just and proper.

**Plaintiff demands a trial by jury on all issues so triable.**

Respectfully submitted,

MILLER SCHIRGER, LLC.


/s/ John J. Schirger
John J. Schirger    MO #60583
Matthew W. Lytle    MO #59145
800 W. 47th Street
Suite 630
Kansas City, MO 64112
Phone: 816-561-6500
Fax:    816-561-6501
jschirger@millerschirger.com
mlytle@millerschirger.com

**ATTORNEYS FOR PLAINTIFF**

15